FILED
SUPERIOR COURT
OF GUAM

2024 JAN 25 PM 4: 45

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM, )  CRIMINAL CASE NO. **CF0075-22**
)  GPD Report No.: 22-03508
)
vs. )
)
)  DECISION AND ORDER RE.
**AINY 1 ANTONIO** aka Prown Mory, )  DEFENDANT'S MOTION TO
DOB: 08/21/1986 or 08/20/1988, )  SUPPRESS EVIDENCE
)
Defendant. )
_____ )

## INTRODUCTION

This matter came before the Honorable Judge Maria T. Cenzon on October 27, 2023, for a hearing on Defendant Ainy 1 Antonio's (the "Defendant") Motion to Suppress Evidence (the "Motion"). Defendant was present during the hearing with counsel Assistant Public Defender Peter Sablan and Assistant Attorney General Kristine Borja represented the People. Following testimony and oral argument by the parties, the Court took the matter under advisement pursuant to CVR 7.1(e)(6)(D) of the LOCAL RULES OF THE SUPERIOR COURT OF GUAM and Administrative Rule Nos. 06-001. After considering the pleadings on file and reviewing the applicable statutes and case law, the Court now issues this Decision and Order DENYING the Defendant's Motion to Suppress Evidence.

*People of Guam vs. Ainy 1 Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 1 of 15

## FACTUAL & PROCEDURAL BACKGROUND

Defendant is charged with Possession of a Schedule II Controlled Substance (As a 3rd Degree Felony), Notice: Commission of a Felony while on Felony Release, and Operating a Vehicle Without a Valid License (As a Violation). *Indictment* (Feb. 11, 2023). These charges stem from an incident that allegedly occurred on or about February 4, 2022, when Officer E. Pewtress ("Officer Pewtress" or "Pewtress") pulled over the Defendant "in response to a routine traffic stop." *Magistrate's Compl. Decl.* (Feb. 4, 2022). The Defendant identified himself as "Mark Risa," but it was later revealed that he did not possess a driver's license and his real name was "Ainy Antonio." *Id.* The Declaration supporting the Magistrate's Complaint also avers that Officer Pewtress "saw, in plain view, a small, clear resealable plastic bag in the center cup holder that contained a small amount of a white crystalline substance, which field-tested positive for methamphetamine/MDMA." *Id.* At the time of the alleged incident, Defendant was on pre-trial release in CF0166-20 and CM0507-19 and had outstanding warrants of arrest in both cases. *Id.*

Defendant seeks to suppress all evidence, including the methamphetamines, obtained following an warrantless search of Defendant's vehicle in violation of the Defendant's Fourth Amendment right against unreasonable search and seizure. Defendant also seeks to prevent Officer Pewtress from testifying at the trial of this matter relating to Defendant's statements or conduct during the incident, as fruit of the poisonous tree. Mot. at 3. The Defendant does not challenge the validity of the traffic stop, but only opposes the search on the basis that Officer

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 2 of 15

Pewtress conducted it without a warrant. The People oppose the Motion, arguing that the Defendant's voluntary consent is an exception to the requirement of a warrant.[1]

## LEGAL ANALYSIS

I. **THE FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCH AND SEIZURE RECOGNIZES VOLUNTARY CONSENT AS AN EXCEPTION TO THE WARRANT REQUIREMENT.**

The Fourth Amendment to the United States Constitution provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, [and] shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. In short, the Fourth Amendment protects against unreasonable searches and seizures and is made applicable to Guam by 48 U.S.C.A. § 1421b(c) of the Organic Act of Guam. *People v. Yerten*, 2021 Guam 8 ¶ 17 (citing *People v. Johnson*, 1997 Guam 9 ¶ 4) (internal citations omitted).

Accordingly, "a warrantless search or seizure is presumed to be unreasonable." *See People v. Quintanilla*, 2020 Guam 8 ¶ 27 (citing *People v. Chargualaf*, 2001 Guam ¶ 14). However, the police may lawfully conduct a search or seizure without a warrant if an exception to the warrant requirement applies, such as voluntary consent. *Id.* Where the consent occurs during a lawful encounter or detention, the validity of the exception turns on whether the consent was voluntarily

---

[1] The People do not advance, and so the Court does not address in this Decision, the applicability of the "plain view" exception to the warrant requirement despite the Declaration to the Magistrate's Complaint indicating that "Officer Pewtress also saw, *in plain view*, a small, clear resealable plastic bag ... that contained a small amount of ... methamphetamine/MDMA." However, the Court notes that it is a recognized exception to the warrant requirement under the 4th Amendment.

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 3 of 15

given. *People v. Camacho*, 2023 Guam 9 ¶ 15. If, however, consent was given during an *unlawful* encounter, the consent is not valid and the exception does not apply "absent a demonstration by the government both of a sufficient break in the causal chain between the illegality and the seizure of the evidence, thus ensuring that the search is not an exploitation of the prior illegality, and of voluntariness." *Id.* (quoting *Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000)(additional citations omitted)). The Defendant here does not asset that the traffic stop was an unlawful encounter; therefore, the Court shall assume that the traffic stop was valid when analyzing the instant Motion.

Whether voluntary consent is given to search is based on all relevant circumstances in a given case. *Camacho* at ¶ 19. When evaluating the totality of the circumstances, courts are required to "balance relevant factors surrounding consent and the credibility of those witnesses presenting evidence." *Id.* (citing *United States v. Rothman*, 492 F.2d 1260, 1264 (9th Cir. 1973)). A trial court must "carefully sift through the unique facts and circumstances of each case, balancing the government's interest in conducting lawful searches and the defendant's right to be free from coercive conduct." *Id.* Of course, the prosecution has the burden of demonstrating the voluntary nature of the consent (and, thus, the lawfulness of the search) by a preponderance of the evidence. *People v. Viva*, 2023 Guam 24 ¶¶ 15 -17 (the government bears the burden of proving the lawfulness of the search; the People bear the burden of showing, by a preponderance of the evidence, that Viva consented to the search).

We consider the following evidence as set forth in the testimony of Officer Pewtress and Defendant Antonio during the hearing on the Motion.

*People of Guam vs. Ainy 1 Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 4 of 15

### 1. Officer Pewtress's Initial Encounter with Defendant.

Around 6:11 AM on February 4, 2022,[2] Officer Pewtress was patrolling along Route 4 in Yona, passing Pago Bay Estates, when he observed a grey 2015 Nissan Sentra Sedan (the "Nissan") whose passenger side tires straddled over the solid white line on the right shoulder. *Id.* at 9:19:12 AM. Officer Pewtress continued following the vehicle motoring uphill towards Yona village on the inner lane and he observed the vehicle straddle over the outer lane once again, and then straddled onto the outer line of the shoulder a third time. *Id.* at 9:19:37 AM. The officer also noticed that the Nissan's passenger side taillight was defective, which he contrasted with the driver's side taillight, which was working. *Id.* at 9:19:38 AM.

As the cars arrived at a flatter area after the hill, Pewtress activated his emergency lights and sirens and, in response, the driver of the Nissan pulled into the center left turn lane, rather than onto the shoulder on the right, yet did not continue to turn left into the parking lot of the St. Francis Church/School, but only stopped in the middle of the road. *Id.* at 9:20:28 AM. Testifying that it was unsafe to remain in the roadway, using his patrol car's horn Officer Pewtress then signaled for the driver of the Nissan to turn into the parking lot, which he did. *Id.* at 9:20:57 AM.

### 2. The Traffic Stop.

Pewtress then parked behind the Nissan and, after alighting from his car, approached the "lone operator," "greeted him, informed him of the reason for the stop, requested for his license, registration, and insurance; however, he indicated that he did not have his license with him, and he was pointing forward, southbound, toward the main road generally, saying that he left it at

---

[2] *Hrg. on Mot. to Suppress* at 9:19:43 AM (Oct. 27, 2023).

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 5 of 15

home. However, through further interaction, he eventually admitted that he didn't have a license at all. He also had no form of identification." *Id.* at 9:21:20 to 9:22:00 AM. During the hearing, Pewtress testified that the person he had pulled over that morning was the Defendant, who he identified during the hearing as seated at Defendant's table. *Id.* at 9:26:28 AM.

After asking the driver of the vehicle if he had *any* form of identification, still unable to produce any, the Defendant identified himself to Officer Pewtress as "Mark Rissa" with a certain date of birth, "both of which were found to be fictitious." *Id.* at 9:22:20 AM. During this interaction, Pewtress "observed [Defendant's] hands visibly shaking, his eyes were widened, and he was fumbling around a lot. So, for safety reasons, in case there were any weapons, I used my flashlight to illuminate the interior and I noticed a clear, resealable plastic bag." *Id.* at 9:22:55 AM.

### 3. The Meth and The Search.

Pewtress testified that he observed a clear, resealable plastic bag in the center cup holder of the Nissan where the hand brake or the gear shift usually is located. *Id.* at 9:31:07 AM. The baggie was not lying flat, but "'canted', somewhat standing up [in the cup holder]." *Id.* After seeing the plastic baggie, Officer Pewtress "asked the Defendant to step out of the vehicle, which he voluntarily did. For safety reasons, I conducted a frisk of his person for weapons, but none were felt." *Id.* at 9:23:25 AM. Defendant was then asked to stay outside the vehicle and was standing between the driver's side door and the hood of the car and free to move around. There were no other police officers at the scene of the stop.

Pewtress testified that, after Defendant exited his vehicle, "I obtained his consent to search the vehicle and he said ... to the effect of ... he has nothing to hide claiming that he's a pastor for

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 6 of 15

a church." *Id.* When asking Defendant for consent to search the vehicle, Officer Pewtress testified that the tone of his voice was calm, he did not have his weapon drawn, that he was the only officer in the area, and that it was only Defendant and Pewtress at the scene. *Id.* at 9:23:32 AM. Pewtress stated that the Defendant did not object to the search. *Id.* During the search, Defendant was not restrained, not placed in the patrol vehicle, and was able to freely roam the area outside the vehicle. *Id.* at 9:26:20 AM. No written consent form was executed by the Defendant, although Officer Pewtress indicated that he did have written consent forms in the trunk of his patrol vehicle. *Id.* at 9:36:00 AM 9:36:31 AM.

With respect to the conversation between Officer Pewtress and the Defendant regarding consent to search the vehicle, the testimony during the hearing was as follows:

BORJA:      To your recollection, what was your tone when you were asking him [for consent]?
PEWTRESS:   It was calm.
BORJA:      What do you remember specifically saying to him when you asked for consent?
PEWTRESS:   Probably something to the effect of, "Do you have any weapons, drugs, or anything of concern? Is it ok if I search the car real quick, if I check inside?
BORJA:      Did you promise him anything?
PEWTRESS:   No.[3]

After receiving permission to conduct the search, Pewtress testified that he immediately checked the "clear plastic baggie" and confirmed that it did contain a small amount of crystalline substance suspected to be methamphetamines. He based this opinion on his experience in conducting approximately 150 to 200 narcotics investigations, having seen suspected

---

[3] *Id.* at 9:24:00 AM to 9:24:28 AM.

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 7 of 15

methamphetamines during these investigations and "based on training, experience and the knowledge that meth is often packaged in such manner." *Id.* at 9:24:56 AM to 9:25:40 AM. Upon confirming that the substance was suspected methamphetamines, Pewtress placed Defendant in handcuffs, secured him "for safety reasons," and verbally advised him of his *Miranda* rights. *Id.* at 9:25:28 AM. Pewtress also conducted a field test on the substance which confirmed it as methamphetamines. *Id.* at 9:27:47 AM; 9:37:30 AM. No evidence of the field test or results thereof was presented to the Court during the hearing.[4] Pewtress testified that the results of the field test were included in his report; however, the report was not presented to the Court for consideration. *Id.* at 9:38:19 AM. Pewtress testified that from the time he pulled over Defendant to stepping out of the vehicle to obtaining his consent, one to two minutes had lapsed. *Id.* at 9:41:33 AM.

When asked by defense counsel while testifying about whether he consented to the search of his vehicle, Defendant testified that, "I gave him permission, but I also told him to provide me documents to search my vehicle." *Id.* 9:45:42 AM. However, no testimony was elicited specifying what type of "documents" Defendant had requested be provided to him nor whether these documents were supposed to be given before or after the search. The direct examination of Defendant regarding consent was as follows:

SABLAN: So, when the police stopped you, the police said that he asked you to step out of the vehicle and they asked you for consent to search the vehicle. The police said that you said that you had nothing to

_____

[4] Although the evidence that field testing was conducted was not presented to the Court during the hearing, the Court finds that whether the field test was conducted or not is not relevant to the determination of whether the warrantless search was reasonable under the 4th Amendment and applicable case law. When appropriately brought before the Court, the question of the admissibility of the methamphetamines evidence on different grounds may be addressed. It is not appropriate here.

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 8 of 15

hide and that you were a pastor. Did you ever give police any consent to search the vehicle?

DEFENDANT [through Court Interpreter]: I gave him permission, but I told him also to provide me documents to search my vehicle.

SABLAN: So, did you allow them to search your vehicle before they gave you documents to search your vehicle?

DEFENDANT [through Court Interpreter: No.

SABLAN: No further questions, your honor.

*Id.* at 9: 44:16 AM to 9:46:40 AM. The Court notes that on cross-examination of Officer Pewtress, the officer was not asked whether Defendant had asked him for written consent documents prior to the search, only whether the officer had such documents in his patrol vehicle and whether the officer had the Defendant execute them. See, *supra.*

## 4. Defendant's Identity Confirmed as Ainy Antonio.

Following his arrest, Defendant was then transported to Central Precinct where Pewtress was able to confirm the identity of the driver of the Nissan as Ainy Antonio, to whom the Nissan was registered. *Id.* at 9:27:09 AM. An additional search yielded information that Antonio had previously been in an accident involving the Nissan. Additionally, a photograph from a prior arrest further confirmed the driver of the Nissan to be the Defendant Ainy Antonio. *Id.* Finally, Defendant admitted to Pewtress while at Central Precinct that he was, in fact, Ainy Antonio. *Id.* at 9:28:10 AM.[5]

//
//
//

---

[5] The People do not advance the argument that the evidence of the methamphetamines would have been inevitably discovered had the Defendant told Officer Pewtress his real name, Ainy Antonio. Officer Pewtress would than have information that the Defendant had several outstanding arrest warrants and been arrested, which would have led to the discovery of the methamphetamines in the vehicle resulting from a search incident to arrest. Because it was not raised as additional basis for the exception to the warrant requirement, the Court does not address it substantively here. See, *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501 (1984).

*People of Guam vs. Ainy 1 Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 9 of 15

## II. THE FOURTH AMENDMENT PROTECTION IS NOT ABSOLUTE.

The Fourth Amendment requires that a law enforcement officer making a traffic stop have reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct. *People v. Taman*, 2013 Guam 22 ¶ 22 (quoting *People v. Cundiff*, 2006 Guam 12 ¶ 40); *see also Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). Reasonable suspicion requires "'some minimal level of objective justification' for making a stop, but considerably less than the level of suspicion required for probable cause." *Id.* (citing *People v. Mansapit*, 2016 Guam 30 ¶ 13 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). To determine whether reasonable suspicion exists, courts look to both the "content of information possessed by police and its degree of reliability," *Id.* (citing *Johnson*, 1997 Guam 9 ¶ 5 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)), which must be "viewed from the standpoint of an objectively reasonable police officer." *Mansapit*, 2016 Guam 30 ¶ 9 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). The Defendant does not challenge the legality of the traffic stop or encounter; therefore, the Court proceeds with the assumption that the stop is valid and continues to discern whether the consent to search was given voluntarily.

As already discussed, searches and seizures without a proper warrant are presumptively unreasonable; however, the presumption is subject to a few exceptions including consent to a search. *See People v. Cundiff*, 2006 Guam 12 ¶ 42. In this instance, the government bears the burden of proving by a preponderance of the evidence that consent was voluntary and voluntariness is based on the totality of the circumstances. *People v. Chargualaf*, 2001 Guam 1 ¶ 25. Factors in determining voluntariness include: 1) whether the defendant was detained and the length of time of the question; 2) whether the defendant was threatened or intimidated by the

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 10 of 15

police; 3) whether the defendant relied on misrepresentations or promises made by the police; 4) whether the person was in custody or under arrest when the consent was given; 5) whether the person was in a public or a secluded place, and 6) whether the defendant objected to the search. *Id.* Because defendant does not argue that the traffic stop itself was unreasonable, the Court shall consider whether voluntary consent was given by the Defendant to search his vehicle after the stop by applying the factors outlined in *Chargualaf.*

### A. The warrantless search and seizure of the Defendant's vehicle was lawful under the Fourth Amendment because the Defendant consented to the search under *Chargualaf.*

Defendant does not challenge the traffic stop which led to the search of the Defendant's vehicle. Instead, Defendant argues that because Officer Pewtress did not have a warrant to search his Nissan, all evidence of the methamphetamines and any of Defendant's statements must be suppressed. However, the People argue that Defendant gave his voluntary consent to search the vehicle. "If consent is given during either a lawful encounter or a lawful detention, as opposed to an illegal seizure, the validity of the consent turns on whether it was voluntarily given." *Chargualaf,* 2001 Guam 1 ¶14 (citing *Santos,* 1999 Guam at ¶¶ 33–34; *Santos,* 1999 Guam at ¶¶ 33–34; *Pennsylvania v. Strickler,* 757 A.2d 884, 888–889 (Pa. 2000)). We look to the factors set forth in *Chargualaf* to determine whether consent was voluntary.

### 1. Defendant's detention was lawful and the length of time between the seizure and the subsequent search did not exceed two minutes.

After Defendant was stopped due to his erratic driving and broken taillight and he failed to produce a license, registration, proof of insurance and any other identification, Officer Pewtress testified that, during the encounter, he observed Defendant's hands visibly shaking, his eyes

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 11 of 15

widened, and he was fumbling around a lot. Upon illuminating the interior of the vehicle with his flashlight, Officer Pewtress stated that it was then he observed the clear, resealable plastic baggie. After he observed the baggie, he instructed Defendant to step out of the vehicle, which he did voluntarily, and performed a pat down of the Defendant to look for any weapons, which he did not have.

Defendant was then asked if he would permit Officer Pewtress to search the Nissan and he responded that he had nothing to hide and that he was a pastor. Although Defendant testified that he permitted the search, he indicated that he told Pewtress to "also to provide me documents to search my vehicle." However, it was not clear based upon the questions asked during the hearing what type of documents Defendant wanted to be provided to him. The direct examination did not elicit the description of a "written consent" document, for example, so the Court will not speculate as to whether Defendant was referring to a written consent or to a custody receipt document or other documentation. What is clear, however, is that the Defendant testified that he did give Pewtress permission to search the vehicle. Moreover, the uncontroverted testimony is that only one to two minutes elapsed between the stop and the request for consent. This factor weighs against suppression.

## 2. Defendant was not threatened or intimidated by the police.

There is no testimony that contradicts Officer Pewtress's description of his manner and tone of communication during the stop and search. As such, the Court finds that Defendant was not threatened nor intimidated by Officer Pewtress during the search. The Defendant does not argue or state otherwise in his Motion nor in his testimony during the hearing. This factor weighs against suppression.

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 12 of 15

### 3. The Defendant did not rely on misrepresentations or promises made by the police.

There is no testimony or allegation that Officer Pewtress made any misrepresentations or promises to the Defendant prior to the search of the vehicle. The Defendant does not argue or state otherwise in his Motion that any promises or representations were made to him during the stop and before consent was given to search. This factor weighs against suppression.

### 4. Whether the person was in custody or under arrest when the consent was given.

The Defendant was not in custody or under arrest when consent was given. The Defendant was not placed under arrest until after Pewtress confirmed, through his training and experience in conducting about 200 narcotics investigations that the substance in the baggies was methamphetamines. It was only then that Pewtress placed Defendant in handcuffs, secured him "for safety reasons," and verbally advised him of his *Miranda* rights. *Hrg.* at 9:25:28 AM. The later field test purportedly confirmed that the substance was positive for methamphetamine. The Defendant does not argue or state otherwise in his Motion that he was in custody or under arrest prior to the search. On the contrary, Defendant testified that during the search and after consent was given, he was asked to move away from the car and that he moved to the front of the vehicle and free to walk around. *Hrg.* at 9:49:43 AM. Because there was no other police officer who could have detained Defendant while Pewtress was conducting his search and based upon the circumstances as testified to at the hearing, Defendant was not detained until after the substance was determined to be methamphetamines. This factor weighs against suppression.

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 13 of 15

### 5. The traffic stop was in a public, not secluded, place.

The traffic stop occurred in the parking lot of the Saint Francis School in Yona, a public place. Despite that it was in the dawn hours of the day, the stop still occurred reasonably close to Route 4 and on a public place, the open and uncovered parking lot of Saint Francis School/Church. This factor weighs against suppression.

### 6. The Defendant did not object to the search.

The Defendant testified that he gave permission to Pewtress to search his vehicle, but testified that he also wanted "documents" for the search. It is not clear from the Defendant's testimony what documents he was demanding. Defendant could have easily been shown on direct examination during the hearing, a written consent form, which Officer Pewtress testified that he had in his vehicle, to confirm that Defendant was demanding a written consent form rather than any other type of document, such as a custodial consent form, or Miranda rights form, or business card. Instead, Defendant told the officer he had nothing to hide and than gave his permission orally. There are no facts that show the Defendant objected in any way to the search or that he continued to insist on executing written consent forms prior to the search. Importantly, Defendant has not cited to any case authority that would *require* that a consent to search, given orally during a traffic stop, is invalidated by the lack of a writing to memorialize the oral consent. This factor weighs against suppression.

### CONCLUSION

Having considered the factors outlined in *Chargualaf,* the Court finds that none of the testimony elicited during the hearing on Defendant's Motion supports a finding in favor of suppression. The People have satisfied its burden of proof, by a preponderance of the evidence,

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 14 of 15

that the search, following a legal traffic stop, was a valid exception to the warrant requirement because Defendant gave his voluntary consent. The duration of time between the traffic stop and the Defendant's permission was approximately two minutes, at most. There is no evidence that Officer Pewtress threatened or intimidated Defendant into giving consent or permission to search. There is no evidence that Officer Pewtress made any misrepresentations or promises upon which Defendant might have relied prior to granting permission to search. Defendant was not in custody nor his movements restricted before the search was conducted. The traffic stop occurred in a public place, in a public parking area off Route 4 in Yona. Defendant did not object to the search, but on the contrary testified that he gave his permission.

For the above reasons, **IT IS HEREBY ORDERED** that the Defendant's Motion to Suppress Evidence is **DENIED**.

SO ORDERED this **JAN 2 5 2024** .

_____
**HONORABLE MARIA T. CENZON**
**Judge, Superior Court of Guam**

**SERVICE VIA EMAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

Abi Pore

Date: 1/25/24 Time: 4:55

Camleria

Deputy Clerk, Superior Court of Guam

*People of Guam vs. Ainy I Antonio*
Criminal Case No. CF0075-22
Decision and Order re. Defendant's Motion to Suppress Evidence
Page 15 of 15